I was hoping they could help us on the insurance coverage issue. Really cleared the room, the insurance. Yeah, I think we should probably have the marshal walk her out. We'll wait until they're out of the courtroom. Yeah. Yeah. This is Patel and this is Glickoff. Mm-hmm. No one's interested in your case, huh? We are. We're not as popular. But just as important. Correct. All right, Ms. Patel, if you're ready, we can go ahead and proceed. Yes, Judge, thank you. May it please the Court, my name is Stephanie Patel. Thank you very much for hearing us today. I represent the appellants, and this case is not nearly as exciting as the one you just heard. This is insurance companies fighting about money. And we believe that we are entitled to twice the amount of money that the district court awarded us. And that's why we're here. We have two primary issues for the court today. One is choice of law, Georgia versus Michigan. And the second is really the interpretation of insurance policy language and its primary versus excess carriers and whether primary policies need to pay all of their limits before an excess carrier is required to contribute. So those are the primary issues. I'll address choice of law first, if that's okay. My question specifically is why, under the law of the case doctrine, shouldn't we declare that when the Georgia Court of Appeals rendered its opinion that Michigan law applied, that the district court here erred when it switched and said Georgia law applied? That would be great if you did. It was my understanding that law of the case went up the chain in that state or superior court of appeals. And when it jumped to federal court, wasn't 100% convinced it would carry over. But I do think the principles underlying that decision or that theory would be important for us to consider. And that is our primary argument here, that all along, all of the parties to the case agreed it was Michigan law. The insureds and the insurance companies who issued policies to Michigan companies expected and agreed that Michigan law applied. Could I just stop you right there, though? Let me go back to Judge Tallman's question. The question is, so the Georgia Court of Appeals applied Michigan law in its decision. Correct. But as I understand it, that case was about Monroe's coverage. Is that correct? Correct. It did not cover the issue of how all these policies, how the payment should be divided up amongst all these insurance companies and policies. That's correct. It hadn't gotten to that point yet. We were establishing coverage first. It was a breach of contract and bad faith action. That's true. So how were, how are we dealing here with legal issues that were actually or by necessary implication decided in the former proceeding, which is standard? Because in terms of the parties and their privies who would be involved in it, obviously Monroe and the excess carrier, well, excuse me, it was just Monroe, the primary carrier who was involved in the Court of Appeals decisions. It did not, not all of the issues were addressed in that opinion. That's absolutely correct. And, in fact, that's why we were not 100% sure that law of the case or even collateral estoppel would jump in in this instance. And we really didn't make those arguments. We weren't sure that we could fully support them, technically speaking. But the principles behind those I think are significant, and many of the cases that we have cited discuss that. What are the expectations of the parties? What are the expectations of the insureds and the insurance companies? And here, because we did have policies issued in Michigan to Michigan companies that everybody agreed was Michigan law from the Court of Appeals down to the parties and to the district court in this case halfway through the litigation until Sue Esponte, he revisited the issue, must have had a really good staff attorney who found the Frank Briscoe decision and some of the cases coming from that. But you're not arguing that because the parties agreed that the court couldn't reach that issue and decide which law applied, are you? No, it's not. I can't say that, that the district court could not or should not have undertaken that analysis, but we did in response to the court's direction to submit briefing on the choice of law issue find several cases where the parties agreed that a different state's law applied, and that was upheld.  We found cases where the expectations of the parties, the insureds and the insurance companies, was important. And if they had agreed or expected that Michigan law applied, that would be upheld. In fact, McGill v. McCurry, which is an 11th Circuit decision from 2005, it was very similar. There was a discussion about Michigan v. Georgia law, and this court found Michigan. And one of the reasons was because that was the expectations of the parties. They were issued to Michigan companies under very similar facts. So I think while the judge probably should have incorrectly reconsidered the issue and discussed it under our facts, did not need to change it. There was no public policy concern. There was no reason to revisit the issue. None of the parties asked the court to revisit the issue, and we just didn't see why it needed to be done. But there is Georgia law that says that under Georgia choice of law rules, the Georgia court will apply statutory law of other states but not common law. So what's your response to that issue? Well, our argument all along was that as I read the Frank Briscoe decision, which is where I believe all of this began, the exception was carved out, really says statutes and decisions construing those statutes, so when another state statute is involved. And our contention here is that the Michigan statute, bad faith, was involved. It was pled in our amended complaint for breach of contract and bad faith. It was attached to the complaint. It was argued throughout the litigation. And, in fact, Judge Hall, in one of his three opinions in this case, specifically found that the Michigan bad faith statute applied to give us 12% interest, which is really why we want Michigan law to apply, because we want that 12% interest based on Monroe's lack of payment for years and years and years now. But even if this is an action for contribution and not for subrogation? I don't think that matters in terms of the Michigan bad faith statute because I think the court's reasoning on the automatic 12% interest made a lot of sense, and I think it was correctly decided. And if we are under Michigan law, then we're looking at, did this insurance company wrongfully deny coverage and refuse to pay? And, yes, they did. But if it is an action for contribution, then Georgia law applies, right? Case over. Well, I don't know that the case would be over at that point. We would prefer Michigan because we want the interest. But even under Georgia law, it's not an action for contribution among joint tort feasors. It's an action of contribution when you look at insurance policies and what the language says. And that's what I think is very important here. When you look at the two primary insurance policies that apply in this case, they both are for the same amount of money, $1 million. They share pro rata, which means they should share equally. And when we look at Monroe's policy, the appellee's policy, it specifically says we will pay on behalf of an insured all sums that this policy applies to, okay? And we know that this policy applied to the judgment that was rendered in this case back in the Superior Court of Columbia County. So when we look at the policy language, whether we're talking Georgia law or Michigan law, when we read that, we say, okay, this judgment applies to this policy. It doesn't talk about how many insureds there are, how many defendants they are, what percentage this insured owes versus that insured. It says all sums an insured must pay to which this policy applies. And how does Michigan law answer the question of who pays what share? I couldn't find a Michigan statute that addresses it. So even if Michigan law applies, what do we look to? I did cite several cases in my brief about priority of coverage under Michigan law, and it is similar to Georgia in that you look to the policies within the same tier of coverage, which would be the two primary policies that would apply first. And you would compare the language of those policies. And if they are for the same amount and they share pro rata, which ours do, and they are for the same amount, then both primary policies should pay the million and exhaust in that tier of coverage before you move up to the excess level, which would be the next tier of coverage. Well, the problem, though, is that Monroe only covered two and the other primary carrier covered all four, right? That is what the district court found, yes. None of those coverage decisions— Monroe didn't write policies for all four. No, that's correct. That's correct. Yes, Monroe definitely covered two of the four. Whether the other insurer covered all four was never addressed below, although Judge Hall did touch on that in his analysis. But yes, to answer your question, Monroe covered two, Renaissance and Nouvelle. But again, I would look to the language of the policy that doesn't specify payment of a judgment or application of coverage based on number of insureds or number of defendants. It's all sums that an insured must pay to which this policy applies. So your argument is that because the judgment was entered jointly in several, even it doesn't matter, both primary carriers were on the hook. That's correct. Yes, because the plaintiff could have gone to any one of those defendants and recovered the whole thing from any which one of them. And if the plaintiff had, as an example, if Renaissance was the only defendant with insurance coverage, let's say—I see my time has expired. Pardon me, I just finished answering this question. If none of the other defendants had insurance, if they were insolvent or somehow uninsured, I am quite sure that the plaintiff could go to Monroe and say, what do you owe on this judgment? You need to pay it on behalf of Renaissance. And it would be for the full million. And it shouldn't be any different because it's an insurance company trying to get that money back. Thank you. Thank you, Ms. Patel. We'll hear from Ms. Glickoff. May it please the Court. My name is Stephanie Glickoff, and I represent the appellees in this matter. At its core, this is not a contractual interpretation matter. This is a contribution matter, which is not an action in contract but an action in tort. So if we look at this matter starting way back in the beginning, this is the fourth court that has actually seen this case. If we look at that, this matter was before the District Court on diversity. As such, Georgia law is used to determine conflict of law in a diversity case. In Georgia, procedure and remedy are governed by the forum state. Again, Georgia. We can't forget how this case came about in the beginning. This was a third-party action to the tort case brought by Renaissance, sometimes referred to in the briefs as RRS, but it was brought by Renaissance against Monroe Guarantee as a breach of contract and a bad faith case under Georgia law for a denial of coverage. That is what was argued up to the Georgia Court of Appeals after Monroe won summary judgment on that issue. And let me make it clear, the bad faith actually was not appealed. Summary judgment on bad faith was not appealed. The only issue that was appealed was coverage under the Monroe policy. The Court of Appeals reversed and sent it back down to the Columbia County Superior Court. Renaissance chose, Renaissance represented by appellant's counsel, Renaissance chose to bring that as a third-party action to the tort action. That's not typical in coverage cases. A lot of times those coverage cases are brought separately, and then what happens is the insurance companies remove it to federal court. I don't know for sure, but the reasoning behind bringing it in a superior court action as a third-party action is typically to keep it in that superior court, so the insurance company can't remove it to federal court, because superior court is a better venue, particularly in Columbia County, for an insured versus insurer. So they made that choice. They chose. They could have brought this in Michigan originally as a coverage case. They could have brought it as a separate coverage case in Georgia. They had several options, but they made the choice to bring it in this particular venue, in superior court, and I'm guessing it was a tactical reason, and now it has backfired on them because now it became a diversity case. So it wasn't. So can you answer my law of the case doctrine question that I pose to your opposing counsel? Yes. The reason that that doesn't matter on this issue is because this is a contribution case, insurer versus insurer contribution, which is not an action in contract. It's an action in tort. But the problem is it's wrapped up in the tort case, and the matter started, as you say, in Columbia County, filed as a third-party cross-claim. As I understand it, the court decided to try the personal injury portion of the case, which resulted in the judgment, but then the matter went from that court to the Georgia Court of Appeals, which then holds that Michigan law applies, remands it to the Georgia Superior Court. It then gets removed to federal court. So it's all the same litigation, and that's why I'm struggling with how could the federal district court, even sitting in diversity after removal, reverse the determination by the Georgia Court of Appeals that it was Michigan law that applied. Because it's a different action. Once it got remitted back to the Georgia Superior Court, the action became a contribution action. The insurance companies, U.S. Fire and Interstate Fire, added themselves as plaintiffs, and then they brought their claim for what they called reimbursement, which is not a claim under the law, a recognized claim, against Monroe, and they added FCCI. At that point, judgment in the tort case had been entered already, and it had been paid by the insurance companies. Renaissance no longer had a claim. Renaissance had no damages. They received a defense, and they received indemnification. They had no damages, so they no longer had a breach of contract claim that's viable. But the action all proceeded, and maybe this doesn't matter, the action all proceeded under the same case number from beginning to end. Is that right? It did. I mean, I realize they realigned the parties, but they didn't reopen a new case and assign it a new civil case number for contribution. And does that matter? I don't know. I don't think it matters, to be honest, if Michigan law is used to interpret the contractual interpretation, because we don't even get to contractual interpretation until we recognize that this is a contribution action. Because it is in diversity, regardless of which law is used to look at the policies, taking the insurance policy interpretation out of it, we've got a contribution case in Georgia court. Whether a case is subrogation or contribution is an issue, it's a remedy under the law. And under the choice of law and conflict of law in Georgia, procedures and remedies are to be determined under Georgia law. So the remedy, the choice of what remedy it is, whether it's a subrogation case, which is a contract action, or whether it's a contribution case, which is an equitable action, that's something that there is no dispute and there has been no dispute in any of the pleadings and any of the briefs. That is something that is determined by the forum state, which is Georgia. So if we look at this, subrogation is not a viable claim in this case in Georgia. Subrogation is when the insurance company would step into the shoes of an insurer that they paid for and then sue another third party that might be liable. But the Michigan bad faith statute would apply if this was an action for subrogation, right? Well, I don't think so. I think Georgia law applies. I think the Frank Briscoe case is on point, and I think that the court can apply that law to this case. So no, I don't think that applies. But I think that if this is a subrogation case and if we are to assume that Michigan law is going to apply to contract interpretation, if this is a subrogation case, we still have to look at the remedies under Georgia law. And the appellants paid this claim on behalf of RENOVO. The check was on behalf of RENOVO. They have said throughout their briefing that they paid it on behalf of RENOVO. RENOVO is not insured by Monroe or FCCI. So if they are subrogees to the rights of RENOVO, their claim disappears and should be dismissed. I want to go back to something you just said. The appellants, I think you argued that the appellants didn't challenge the idea that Georgia law would apply to a contribution action. What they challenged was the application of Georgia law to the contract interpretation question. Is that correct? Correct. Okay. And, in fact, they flip-flop as to whether this is contribution or subrogation. If you look at one of their briefs, document 57, they say this is not a subrogation claim, this is a contribution claim. Up in this court, they're saying, oh, it's definitely subrogation because it's a contract. But I was indicating that subrogation wouldn't be viable first because they paid on behalf of RENOVO, who's not insured. So if they stepped into the shoes of RENOVO, they can't sue Monroe or FCCI because there's no claim against them. We didn't insure them. You can't sue us for that. And then the other issue is if they stepped into the shoes of RENOVO, who they paid on behalf of, they potentially would have a claim against Renaissance, who we did insure, but they can't do that under the Frank Briscoe case for another reason in that case. That case not only addressed choice of law, but also addressed the fact that you can't be subrogated against a co-insured. You basically can't sue yourself for money because they also insure Renaissance. They can't be subrogated to RENOVO's rights and then sue Renaissance. So once we get to the fact that this is clearly a contribution action and the judge of the district court got that issue correct, then we get to the contract issue. Then we get to the how do you allocate among the different insurers. And that issue doesn't really require contractual interpretation. And I think the law in both states in terms of you look at the—and by both states, I mean Michigan and Georgia— the law that says you look at the plain language of the contracts, it's both the same. So what we have here is we've got a total judgment of around $2.5 million. We have four defendants with a joint and several verdict. Now, we have argued since the beginning that that should have been apportioned, but it wasn't. If—presuming that the court's not going to go back and apportion it now as we have requested. Well, how would we do that? I mean, as I understand it in our current Georgia law, the jury is asked to make an apportionment at the same time it makes a determination of liability. So without reopening and retrying the underlying personal injury action, what's wrong with the district court doing a little rough justice here and saying, okay, I'm going to give 25 percent as to each and work it out that way? I mean, what should we tell the district court to do on remand if we reverse? Well, I think—I hope you won't reverse. What does the court look to, though, to answer the question of who owes what to whom? So in Michigan, in the secure case that's cited in the briefs, they actually did go back and have a second trial on liability, and it would be the insurance companies fighting over which defendants are liable. But the only other way is, as you said, the equitable way would be to split it into shares, which is what you do with joint and several liability. So we assume that it was split into shares, and I do think that is fair. It's not the ideal on our side of the table, but I think that it is an equitable way to split it. If we split it into four shares of around $632,000 each, then we have Monroe obligated to pay half of the shares for their two insureds, and then you have the appellant obligated to pay half of the shares of the mutual insureds and then the entirety of their exclusive insureds. To address the excess, what appellants would like to do in terms of the primary and excess policies is they would like both primary carriers to put in all their money before it reaches excess, but it ignores the language in their own excess, the interstate fire excess policy, which they quote on page 27 of their brief, which states that the interstate fire policy kicks in after underlying insurance, in quotes, is exhausted. Underlying insurance is defined, anything in an insurance policy that is in quotes is defined. It is defined as a scheduled policy. The scheduled policy is the U.S. fire policy. So the minute the U.S. fire policy is exhausted, per the words of the interstate fire policy, that is when interstate kicks in. Interstate is not connected to whether or not Monroe Tenors pays all its limits. That wouldn't be fair to the interstate insured, and it wouldn't, it wouldn't, Monroe's not in a contractual relationship or any kind of relationship with interstate. So if you look to the plain language of the interstate policy, that is where you see that it does, it kicks in as soon as the U.S. fire and no other policy is exhausted. So the idea of having both primary policies have to kick in their full million first just doesn't make sense when you read the language. That language, that language in quotes that is in page 27 of their brief was completely ignored by appellants. So in closing, unless there are any more questions, because this is a contribution action under Georgia law, which is an action in tort and equity and not an action in contract, appellees don't believe that the whole choice of law issue with regards to contractual interpretation kicks in until after, at most, until after the shares, the contributed shares are split up among the four tort fees, and only then it would apply to interpret the contracts of the various insurance policies, not in terms of coverage, because that's already been decided, but in terms of who goes first and who goes second. And it is clear that U.S. fire goes, and when U.S. fire is out of money, when their limits are exhausted, that interstate fire kicks in. Monroe guarantee goes. When Monroe's out of money, then FCCI, the excess over them, kicks in. In this case, because Monroe, based on the shares, because Monroe's hasn't been exhausted, then there's no judgment against FCCI. And we ask that you affirm the judgment in the underlying case. All right. Thank you, Ms. Glickoff. We'll hear again from Ms. Patel. Yes, thank you. To answer the question, Judge Talman, both primary policies kick in in this case, contrary to Apolli's argument, because Monroe had two insureds with a judgment rendered against them at a trial that Monroe flat-out refused to defend. No reservation of rights, no deck action, flat-out denied coverage, which was found to be wrong. So number one, Monroe does not get to complain about anything that happened at trial or anything that transpired with their insureds, plural, at trial, because they chose not to defend and wrongfully denied coverage. They should have defended. And, in fact, we did recover defense costs from Monroe because the two primary policies were supposed to be defending Renaissance. And that case has been resolved, so there's nothing for you to hear today. But where we have not been able to agree is whether the full million dollar on the primary policy should be paid. And for the reasons that I stated earlier, they should, because the language of the policy does not limit payment to number of insureds or number of defendants or anything like that. Our excess carrier should never have been required to pay until all primary policies were exhausted, not because we covered these people or these people or they covered these people or these people, but because Monroe insured Renaissance and Nouvelle, who had a judgment against them, their policy, primary policy, applied to that judgment, and that should have been satisfied. And it wasn't. So what's your answer to her argument that we have to look at the language within the policy and that would somehow change the result? I'm not sure I totally understand how, but I'm still trying to figure out what we would tell the district court if we reversed. I do think we look at the language of the policy, and I think it results in what I am arguing, which is all sums that Monroe must pay for an insured to which this policy applies. And the judgment was $2.5 million that Renaissance and Nouvelle said, Monroe, here's my judgment for $2.5 million. I have $1 million in primary coverage, and they have said, no, we're not going to pay that. We think we should only pay, frankly, zero is what they wanted to pay, but ultimately Judge Hall came up with the $632,000. And I understand how he did that, and rough justice may well be the answer to what that was, but I don't think that's the right analysis to use because when you look at the Monroe policy, it doesn't limit what they pay by anything. It's all sums an insured must pay. Once the judgment is rendered, the insured then goes to that carrier and says, you need to pay this. It's $1 million because if nobody else had coverage, they would have had to pay it. So I don't think it changes at all. So I think what we tell the district court and what we would ask the district court on remand is to say, you had a thorough, well-reasoned opinion, but we think Michigan law should have remained the applicable law in this case because it was Michigan law and should have stayed Michigan law. This was a subrogation action to which the bad faith statute applies, as Judge Wilson mentioned earlier. And by the way, Renaissance, the insured under Monroe's policy, was always in the case with a bad faith and breach of contract action. Even when it came back to the Superior Court of Columbia County from the Georgia Court of Appeals, Renaissance, the insured, was a plaintiff with a claim for bad faith and attorney's fees and all kinds of other things. So now at this point, we are nine years into litigation with a wrongful denial of coverage and absolutely no penalty to Monroe for wrongfully denying coverage. And that's why we really want Michigan law and the bad faith statute to apply in this case. And I think it can be done by simply saying, we're not going to reverse the Georgia Court of Appeals. We think it should have stayed Michigan law. It is a subrogation action for breach of contract under Michigan law. And you get 12% interest because otherwise Monroe is rewarded for their bad behavior throughout this litigation and refusing to not only defend their insurance, but to pay anything on their behalf until we got here. So that's what we would ask you to do. And we thank you very much for your time. Thank you, counsel. And the court is adjourned. All rise. Thank you.